# McQueen *v.* McQueen.

*Bill in Equity to enforce Vendor's Lien for Purchase-Money of Land.*

1. *Executor's authority to receive Confederate currency, in payment of notes given for purchase-money of land.*—Where lands were sold on credit in July, 1861, and the purchaser paid the several notes, as they fell due during the war, to the vendor's executor, in good faith, in Confederate currency, the debt was thereby extinguished; and in the absence of fraud or collusion between the purchaser and the executor, the persons interested in the vendor's estate, whether as heirs, devisees, or creditors, cannot assert a vendor's lien on the land.

2. *State courts and judicial proceedings during the war.*—The State courts of Alabama during the late war were legal courts, and their judgments and decrees are to be respected accordingly.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. ADAM C. FELDER.

The bill in this case was filed on the 10th August, 1871, by the children and heirs-at-law of Samuel McQueen, deceased,

[McQueen v. McQueen.]

who were also legatees and devisees under his will, against Richard H. Cross, as the executor of the last will and testament of said Samuel McQueen, James Chambers, who was the only solvent surety on said executor's official bond, and James G. McQueen; and sought to enforce a vendor's lien for the purchase-money of a tract of land, which the said Samuel McQueen had sold to the said James G. McQueen, in July, 1861, taking his three promissory notes for the purchase-money, which fell due on the 1st January, 1863, the 1st January, 1864, and the 1st January, 1865. Samuel McQueen died in September, 1863; his will was duly admitted to probate in Lowndes county, where he resided, and letters testamentary were granted to said R. H. Cross, as his executor, by the Probate Court of said county; and the executor received payment of the notes, as they respectively fell due, in Confederate treasury-notes. On final hearing on pleadings and proof, the chancellor rendered a decree for the complainants; holding that the executor had no authority to receive Confederate currency in satisfaction of the notes. He therefore declared the purchaser's notes re-established, and entitled to a vendor's lien on the land, and ordered an account to be stated by the register, to ascertain the amount due, giving the executor credit for the value in United States money of the Confederate currency which he had expended for the benefit of the estate. From this decree James G. McQueen now appeals, and here assigns it as error.

CLEMENTS & ENOCHS, and WATTS & TROY, for appellant, cited *Glenn v. Glenn*, 41 Ala. 571; *Harris v. Parker*, 41 Ala. 604; *Watson v. Stone*, 40 Ala. 451; *Bibb & Falkner v. Avery*, 45 Ala. 691; *Wright v. Stott*, 46 Ala. 200; *Ryland v. Griffin*, 45 Ala. 688; *Riddle v. Hill*, 51 Ala. 224; *Parks & Brewer v. Coffey*, 52 Ala. 32; 4 Wheaton, 246; 9 Cranch, 191.

MANNING, J.—The object of the bill in this cause, and the effect of the decree in it, were to have land ordered to be sold, and a supposed vendor's lien upon it executed, to pay the purchase-money for which a deceased testator had sold it, after his executor had delivered up the notes therefor to the purchaser, upon receiving from him the amount they called for, in the treasury-notes of the late Confederate States, known as " Confederate currency." The land was sold on the 29th day of July, 1861; the vendor died in February, 1863; and the transactions were completed during the late war. The evidence does not show any collusion between the executor and the vendee of the land, nor any fraud on the part of the latter, or that it was a transaction different

from those of every-day occurrence during the period within which it took place.

In *Waring v. Lewis*, 53 Ala.; *Baldwin v. Hatchett*, during the present term ; *Van Hoose v. Bush*, at the last term, and in some other cases, we have had occasion to consider the title and powers of executors and administrators, to and over the assets of the estates committed to them, and in what respects they differed from those of agents, attorneys, and ordinary trustees. The law in England, and in this country generally, is that, so long as an executor is acting within the line of his authority (as he certainly does in receiving payment of debts due to his testator), and payment is made to him by the debtor, in good faith, in the currency which is at the time in general circulation as money, the executor's receipt is conclusive against the legatees and distributees of the estate. According to the principles settled in the cases referred to, complainants in the court below were not entitled to the decree rendered by the chancellor in their favor.

2. The other main question, intended to be presented by the bill of complaint, that the Probate Court of Lowndes county, during the war, was an illegal court, and that the settlements made by Cross, the administrator, therein, were therefore nullities, has been settled, since the bill was filed, adversely to that proposition. That court was a valid court, and its decrees are to be respected accordingly.—*Parks v. Coffey*, 52 Ala. 32.

The decree of the chancellor must be here reversed, and the bill dismissed, at the costs of appellees, in this court, and in the court below.

STONE, J., not sitting, having been of counsel.